In re Celeste GRAHAM, Debtor.

Celeste GRAHAM, Plaintiff,

v.

UNITED STATES Of America, Defendant.

Bankruptcy No. 95–12936.
Adv. No. 95–1750.

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

July 24, 1996.

## ORDER

158

Kenneth J. Freeman, Cleveland, Ohio, for plaintiff.

Gregory S. Nickerson, U.S. Dept. of Justice, Washington, DC, for defendant.

### MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

This adversary proceeding came on for trial on July 12, 1996. Plaintiff initiated this adversary proceeding seeking to discharge some $880,000.00 in tax liability apparently under the auspices of 11 U.S.C. § 523(a)(1). The Defendant consented to the discharge of $860,000.00 of such liability. The balance of the tax claim at issue is for taxes due from the years 1983, 1984 and 1985. Plaintiff seeks to absolve herself from such liability pursuant to the innocent spouse provision as codified at 26 U.S.C. § 6013(e).

By amended complaint, the Plaintiff asserts dischargeability of the subject tax liability for the years 1983, 1984 and 1985 pursuant to 11 U.S.C. § 523(a)(1). The elements of § 523(a)(1), however, are not at issue here. Indeed, Plaintiff has not presented evidence nor legal argument in support of the elements of § 523(a)(1). Rather than seeking discharge of a tax liability pursuant to § 523(a)(1), Plaintiff's case reveals that she seeks a determination that she is not liable for the taxes owing. Such a determination may be made by this Court pursuant to 11 U.S.C. § 505(a)(1). *Accord Lilly v. I.R.S. (In re Lilly)*, 76 F.3d 568 (4th Cir.1996). This Court will make its determination according to that statutory authority. This determination falls within this Court's core jurisdiction pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b)(2)(B) and (O).

 The innocent spouse provision provides a limited exception to the normal rule of joint and several liability for husbands and wives who file joint federal income tax returns. *See* Act of Jan. 12, 1971, Pub.L. No. 91–679, 84 Stat. 2063. In enacting section 6013(e), Congress was responding to decided cases where imposing joint and several liability resulted in "grave injustice." H.R.Rep. No. 91–1734, 91st Cong., 2d Sess. 2 (1970); S.Rep. No. 91–1537, 91st Cong., 2d Sess. 2 (1971–1 C.B. 6060, 607); *See Hayman v. Commissioner*, 992 F.2d 1256, 1258 (2d Cir. 1993). Under prior law, as Congress noted, a spouse could be held jointly liable for taxes where, for example, a husband fails to report on the joint return embezzled funds, secretly squanders them, and then deserts the wife, "even though she had no knowledge of her husband's activities and the resulting omission from income, and even though she did not benefit in any way from the use of the funds." S.Rep. No. 91–1537, *supra* at 1 (1971–1 C.B. at 607). The innocent spouse provision was designed to correct the unfairness of treating both spouses as equally liable for the tax on the unreported income in such circumstances.

In order to be relieved from joint and several liability under section 6013(e), a taxpayer must meet four requirements. These

requirements are set out in 26 U.S.C. § 6013(e)(1) as follows:

(A) a joint return has been made pursuant to section 6013(a) for a taxable year;

(B) on the return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse;

(C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement; and

(D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement.

26 U.S.C. § 6013(e)(1).

■ Plaintiff bears the burden of proving each of the four elements of § 6013(e) by a preponderance of the evidence. *Purcell v. Commissioner*, 826 F.2d 470, 473 (6th Cir. 1987), *cert. denied*, 485 U.S. 987, 108 S.Ct. 1290, 99 L.Ed.2d 500 (1988); *Shea v. Commissioner*, 780 F.2d 561, 565 (6th Cir.1986); *Kirk v. United States of America (In re Kirk)*, 98 B.R. 51, 54 (Bankr.M.D.Fla.1989).

The evidence presented shows that Plaintiff was married to Tom Graham (Graham) from 1973 through approximately 1987. (Direct testimony of Plaintiff; Direct testimony of Graham) (hereafter "Dir. ___" and "Cr. ___"). Graham is an accountant. (*Id.*). He was self-employed from 1979 or 1980 through 1989. (Dir. Pltf.; Cr. Graham). Although not a certified public accountant nor a public accountant, his business performed accounting and tax services and later got into financial planning and selling investments. (Dir. and Cr. Graham). He operated several businesses; Graham & Associates, Graham Investments, Tag Consulting, Associated International Marketing, Sonya Inc. and Management Accounting and Tax Services. (Cr. Graham; Ex. A–5, A–6, A–14, A–18, B–6, B–7, B–18, C–6, C–11).

Both Plaintiff and Graham graduated from Baldwin Wallace College in 1973 and 1972, respectively. (Dir. Pltf.; Dir. Graham). Plaintiff majored in voice and minored in education. (Dir.Pltf.). Graham obtained a degree in business and accounting. (*Id.*;

Dir. Graham). Plaintiff worked as a claims adjuster for State Farm Insurance through 1979. (Dir.Pltf.). She left State Farm on maternity leave when she had her first child. (*Id.*). In 1984, she began to work full time at Graham's office performing clerical and administrative functions. (*Id.*). She filed, typed, signed checks, and performed whatever else was asked of her. (*Id.*). According to Graham, she performed bookkeeping functions and processed paperwork. (Dir. Graham). She continued to work full time through mid–1987 when she left Graham and filed for divorce. (Dir.Pltf.). She did not receive any compensation for her work until 1985 when she received the amount of approximately $19,000.00. (*Id.*). No government withholding taxes were deducted from her paycheck. (Cr.Pltf.; Ex. B–3).

Many of the investments sold by Graham were partnership interests. It is the partnership interests in Ace–1 and Ace–2 that are at issue here. Specifically, the subject tax liability arose as a result of the disallowance of deductions taken by Ace–1 and Ace–2. (Dir. Meech; Ex. 14, 15, 17). Graham formed these two partnerships with the assistance of legal counsel and their tax returns were prepared by Graham & Associates. (Cr. Graham; Ex. 16).

■ For purposes of determining the third element of § 6013(e)(1), Plaintiff must show that she did not know or have reason to know that there was a substantial understatement of tax. 26 U.S.C. § 6013(e)(1)(C). In the 6th Circuit, the test for actual knowledge as contemplated by § 6013(e)(1)(C) is "not knowledge of the tax consequences of a transaction but rather knowledge of the transaction itself." *Purcell v. Commissioner*, 826 F.2d 470, 474 (6th Cir.1987), *citing Quinn v. Commissioner*, 524 F.2d 617, 626 (7th Cir.1975). The 6th Circuit has applied the same test advanced by the Restatement (Second) of Agency § 9, comment *d* (1958) with respect to the "reason to know" factor of § 6013(e)(1)(C):

A person has reason to know of a fact if he had information from which a person of ordinary intelligence which such person may have, or of the superior intelligence which such person may have, would infer

that the fact in question exists or that there is such a substantial chance of its existence that, in exercising reasonable care with reference to the matter in question, his action would be predicated upon the assumption of its possible existence.

*Shea v. Commissioner,* 780 F.2d 561, 565 (6th Cir.1986), *citing, Sanders v. United States,* 509 F.2d 162, 167 (5th Cir.1975). The *Shea* case is remarkably similar to the case at bar. In *Shea,* the plaintiff was an officer of the spouse's business and in that capacity she was authorized to and did draw checks on the corporate bank account. "She also made bank deposits, answered the telephone, and performed other routine tasks." *Id.* at 566. Holding that "[p]articipation in a spouse's business affairs has commonly been held to negate an innocent spouse claim" and that "a minimal involvement in a family's financial affairs can satisfy the 'reason to know' standard," the 6th Circuit held that the plaintiff in *Shea* could not avail herself of the innocent spouse provision for those years in which a joint tax return was filed. *Id.* at 566–67.

> [Even if the taxpayer claims to have signed the returns without reading them], she nevertheless is charged with constructive knowledge of their contents. * * * Indeed, even a cursory glance at the return would have brought the deductions to her attention, especially since ... the losses claimed from the tax shelter investments were larger than the income reported by Hayman and her husband ... tax returns setting forth large deductions, such as tax shelter losses offsetting income from other sources and substantially reducing or eliminating the couple's tax liability, generally put a taxpayer on notice that there may be an understatement of tax liability. * * * A would-be 'innocent spouse' cannot rely on 'ignorance of law' as a defense."

*In re Hayman, supra,* at 1262 (citations omitted).

Plaintiff's own testimony revealed that she worked full time in Graham's office. She signed checks and other documents put before her. Notwithstanding that the investments were reported for tax purposes on the Schedule C for Graham Investments, a business that was not incorporated and which Graham considered himself to be the sole owner (Cr. Graham), Plaintiff had knowledge that she was an owner of some investments and inquired to their nature. (Cr.Pltf.). She was not under duress when she signed the relevant tax returns. (Cr.Pltf.). With regard to the Ace–1 and Ace–2 interests, Plaintiff testified that it was possible that she was an owner of those partnership interests and that she signed checks for interests in those partnerships. (Cr.Pltf.). Further, the evidence revealed that Plaintiff was listed as the owner on the K–1's and that barring a clerical error, such was an indication of ownership [1]. (Dir. Graham; Dir. Meech; Ex. 5, 6, 7, 8). Graham also testified that he explained the tax ramifications of the investments to her, although he did not know if she understood.[2] (Dir. Graham).

It is an inescapable conclusion that Plaintiff did not meet her burden of proof with regard to this prong of the innocent spouse provision of § 6013(e). She did not sustain her burden that she did not have actual knowledge of the Ace–1 and Ace–2 investments in the years 1983, 1984 and 1985. Further, she did not sustain her burden that she did not have reason to know of the Ace–1 and Ace–2 investments in those years. Accordingly, the Court need not address the remaining elements.

Judgment is entered in favor of Defendant and against Plaintiff. Each party is to bear its own costs.

IT IS SO ORDERED.

---

1. Graham testified that he would have to review the closing documents (which have been destroyed) to confirm true ownership of Ace–1 and Ace–2, but barring a clerical error, the name on the K–1 would be an accurate indication of ownership. The testimony of Terese Meech, of the I.R.S., concurred with Graham's statement.

2. The Court notes that Plaintiff testified that she removed herself as trustee of a trust due to her lack of understanding with regard to the trust.