**In re Deanna Sue FRENCH, Debtor.**

**Deanna Sue French, Plaintiff,**

**v.**

**United States of America, et al., Defendants.**

**Bankruptcy Nos. 98–3209.**

United States Bankruptcy Court, N.D. Ohio.

Sept. 9, 1999.

Deanna Sue French, Oregon, OH, pro se.

Mark R. McBride, Toledo, OH, for plaintiff.

U.S. Attorney General, c/o Janet Reno, Washington, DC, pro se.

Stacy Hallett, Washington, DC, for defendant.

### MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Chief Judge.

This cause comes before the Court upon the Plaintiff/Debtor's Complaint, brought pursuant to § 505(a) of the United States Bankruptcy Code, to have this Court determine that the Plaintiff Debtor should not have any tax liability for the years 1987 through 1994 pursuant to the Innocent Spouse Rule as contained in Title 26 of the United States Tax Code. On November 24, 1998, a Pre–Trial was held on this matter at which time the Parties were ordered to report to the Court by March 5, 1999. Neither Party, however, contacted the Court by this date, and thus an Order to Show Cause was issued on March 12, 1999. Thereafter, the Parties submitted a Joint Status Report informing the Court that discovery had been completed, and that within thirty (30) days of the filing of the Report, the Parties would be submitting Cross–Motions for Summary Judgment. On April 12, 1999, the Court received the Plaintiff's Motion for Summary Judgment along with a Memorandum in Support. However, it was not until April 30, 1999, that the Court received the De-

fendants' Motion for Summary Judgment accompanied with a combined Memorandum in Opposition to the Plaintiff's Motion for Summary Judgment and a Memorandum in Support of its Motion for Summary Judgment. In response thereto, the Plaintiff, on May 12, 1999, filed both a Motion to Strike the Defendants' Summary Judgment Motion on the basis of it being untimely filed, and a Reply to the Defendants' Motion for Summary Judgment. This Court has now reviewed the Motions submitted by the Parties and the arguments of Counsel contained therein, as well as all of the exhibits and the entire record of the case. Based upon that review, and for the following reasons, the Court finds that the Plaintiff's Motion for Summary Judgment and Motion to Strike should be Denied; and that the Defendants' Motion for Summary Judgment should be Granted to the extent provided for in this Opinion.

### FACTS

The Plaintiff/Debtor, Mrs. Deanna Sue French (hereinafter Mrs. French) is a widow whose husband of 36 years (hereinafter Mr. French) passed away approximately three to four years ago. While alive, Mr. French owned and operated a small lawn care and janitorial business, and the income derived from this business constituted for all practical purposes the couple's sole source of income. The record of this case, however, reveals that from 1987 through 1993, Mr. French neglected to file tax returns or pay any income tax on his business income, and as a consequence in 1994, pursuant to 26 U.S.C. § 6020(a), the Internal Revenue Service (hereinafter IRS) prepared tax returns on behalf of Mr. and Mrs. French. On the tax returns prepared by the IRS, Mr. and Mrs. French elected a joint filing status, and in accordance therewith, Mrs. French, along with her husband, signed the tax returns

prepared by the IRS for the years 1987 through 1993. On these tax returns the IRS calculated the joint tax liabilities of the Frenchs to be Seventy Thousand Nine Hundred Fifty-five Dollars ($70,955.00), with an additional Thirty-seven Thousand Eight Hundred Seventy-seven and 67/100 Dollars ($37,877.67) assessed as interest, and an additional Fifty-four Thousand Six Hundred Seventy-one and 66/100 Dollars ($54,671.66) charged against Mr. and Mrs. French as a penalty.

In 1994, Mrs. French and her husband also filed a joint income tax return with the IRS, indicating a 1994 tax liability of Six Thousand Three Hundred Thirteen Dollars ($6,313.00), with the IRS subsequently assessing an additional penalty in the amount of One Thousand Six Hundred Seventy-two and 95/100 Dollars ($1,672.95). On this 1994 tax return, Mrs. French's occupation was reported as self-employed, while her husband's occupation was reported as disabled. The 1994 income tax return also listed Mrs. French as the proprietor of her husband's business which was named "A-2 Janitorial and Sue French Lawn Care."

At the present moment, no additional tax, other than the amounts listed above, has ever been assessed against either Mr. or Mrs. French for the years running from 1987 through 1994. However, as Mr. and Mrs. French were unable to pay their outstanding tax obligations, the IRS in 1995 and 1996 recorded notices of liens against all the real property at that time owned by Mr. and Mrs. French.

On July 8, 1997, after Mr. French had passed away, Mrs. French filed for relief under Chapter 7 of the United States Bankruptcy Code listing Two Hundred Thirty-nine Thousand Five Hundred Ninety-three and 48/100 Dollars ($239,593.48)[1] in debt owing to the IRS which constituted by far the majority of the total outstanding indebtedness listed by Mrs. French. No

---

1. It appears this figure is the result of interest that has accumulated on the tax and penalties that were originally assessed by the IRS.

complaint to determine the dischargeability of this debt, however, was ever filed with the Court in accordance with 11 U.S.C. § 523(a)(1), but on September 9, 1998, after Mrs. French had received her bankruptcy discharge and after the IRS had sold Mrs. French's interest in her real property, Mrs. French commenced an adversary proceeding in this Court, pursuant to 11 U.S.C. § 505(a), to determine her tax liability. In her Complaint, Mrs. French asserts that she should not have any tax liability for the years 1987 through 1994[2] pursuant to the Innocent Spouse Rule as codified under 26 U.S.C. § 6015. More precisely, Mrs. French asserts that her lack of involvement in the operation of her husband's business, including its financial affairs, relieves her under the Innocent Spouse Rule from any liability for the unpaid taxes incurred during the operation of her husband's business. In addition, Mrs. French also asks this Court to invoke its equitable powers, under 11 U.S.C. § 105(a), so as to void and set aside the sale of the real property formerly owned by Mrs. French and her husband.

In support of the assertion that she qualifies as an innocent spouse under 26 U.S.C. § 6015, Mrs. French proffered to the Court, along with her Motion for Summary Judgment, an affidavit whereby Mrs. French stated as follows:

1. My husband handled all the financial affairs of the family, including running his janitorial and lawn care businesses, and all the income, deductions and tax information on our returns is attributable entirely to him.

2. I did virtually nothing for [my husband's] businesses except to provide some labor in the janitorial business. I never dealt with the money, the taxes, or the records and I did not know where or what records my husband kept.

3. The only money I ever received from my husband was for some house-

hold expenses and I had no job income since I quit working at Sears in the early 1980's[.]

4. [My husband,] J.D. French kept all the records of the businesses he was running, prepared all the tax returns, he kept most of the money generated and I was not particularly aware of the tax problems.

5. During the 36 years we were married, I had no personal knowledge of and a lack of reason to have personal knowledge of the substantial understatement of tax liability because I had no involvement in the operation of the business and merely was asked to sign the returns that were prepared by someone else.

In opposition to the arguments put forth by Mrs. French, the Defendants, the United States of America, et al. (hereinafter United States), assert that the substantive requirements of the Innocent Spouse Rule are not met. In addition, the United States asserts that even if this Court were to rule otherwise, the Court does not have the jurisdictional authority to issue any order which voids and thereafter sets aside the sale of any real property after a debtor receives a discharge.

### LAW

Section 505 of the United States Bankruptcy Code reads in pertinent part:

**11 U.S.C. § 505(a). Determination of tax liability**

(a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

(2) The court may not so determine—

---

**2.** Mrs. French also asserts that this Court should make a determination of her tax liability for the year 1995. However, no evidence has been presented to the Court showing that Mrs. French owes any money for this year.

(A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title....

Section 6015 of the United States Tax Code provides in pertinent part:

**26 U.S.C. § 6015. Relief from joint and several liability on joint return**

(b) Procedures for relief from liability applicable to all joint filers.—

(1) In general.—Under procedures prescribed by the Secretary, if—

(A) a joint return has been made for a taxable year;

(B) on such return there is an understatement of tax attributable to erroneous items of one individual filing the joint return;

(C) the other individual filing the joint return establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement;

(D) taking into account all the facts and circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for such taxable year attributable to such understatement; and

(E) the other individual elects (in such form as the Secretary may prescribe) the benefits of this subsection not later than the date which is 2 years after the date the Secretary has begun collection activities with respect to the individual making the election, then the other individual shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such understatement.

(f) Equitable relief.—Under procedures prescribed by the Secretary, if—

(1) taking into account all the facts and circumstances, it is inequitable to hold

the individual liable for any unpaid tax or any deficiency (or any portion of either); and

(2) relief is not available to such individual under subsection (b) or (c), the Secretary may relieve such individual of such liability.

## DISCUSSION

A determination of a debtor's tax liability under 11 U.S.C. § 505(a) involves a right afforded to a debtor by virtue of the Bankruptcy Code, and is therefore a core proceeding pursuant to 28 U.S.C. § 157(b)(2). *See Fyfe v. United States (In re Fyfe)*, 186 B.R. 290, 291 (Bankr.N.D.Ga. 1995); *In re Hunt*, 95 B.R. 442, 444 (Bankr.N.D.Tex.1989).

This case comes before this Court upon the Parties' Cross–Motions for Summary Judgment. However, before addressing these Motions, the Court must first determine whether to grant the Motion by Mrs. French to strike the Summary Judgment Motion submitted by the United States on the basis that it was not filed within the time originally agreed to by the Parties in their Status Report to the Court.

A motion to strike, *in toto*, a motion for summary judgment on the basis of it being tardily filed is not specifically recognized by the Federal Rules of Bankruptcy Procedure or the Federal Rules of Civil Procedure. Rather, Bankruptcy Rule 7012(f), which incorporates Rule 12(f) of the Federal Rules of Civil Procedure, only recognizes a motion to strike if it involves a "pleading" which contains "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Nevertheless, in appropriate circumstances, the federal courts, including this Court, recognize motions to strike outside the context of Rule 12(f). *In re Davis*, 173 B.R. 124, 125 (Bankr.N.D.Ohio 1994); *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1408 (5th Cir.1995); *Rizzo v. Tyler*, 438

F.Supp. 895, 899 (S.D.N.Y.1977). In determining whether it is proper to grant such a motion, the court deciding the matter is given a large degree of discretion. However, as when ruling on any motion a court should use and apply cognizable standards, and in a situation where a party is seeking to strike an opposing party's motion for summary judgment on the basis of the motion being tardily filed, this Court finds the following considerations germane:

(1) the actual amount of time the motion was filed late;

(2) whether the party who filed the late motion disobeyed a direct order of the court;

(3) the degree of prejudice that will befall the other party if the tardily filed motion is allowed;

(4) whether allowing the late filed motion would help the Court adjudicate the matter.

*See Henderson v. New York Life, Inc.*, 991 F.Supp. 527, 530 (N.D.Tex.1997).

Applying these considerations to the case at bar, the Court observes the following: (1) the United States filed its Motion for Summary Judgment within eighteen (18) days after the Parties' agreed upon deadline; (2) the United States did not disobey a direct order of the Court; (3) no great prejudice will be incurred by Mrs. French as a result of the United States filing its Summary Judgment Motion eighteen (18) days after the agreed upon date between the Parties considering that Mrs. French's legal counsel was given the opportunity to fully address the arguments contained in the Motion; and (4) the Memorandum and evidentiary materials submitted by the United States in its Summary Judgment Motion will assist the Court in making its decision. Accordingly, as these considerations lean strongly in favor of allowing the Summary Judgment Motion submitted by the United States, the Court will deny Mrs. French's Motion to Strike, and thus the Court now turns to examine the legal standard upon which both Parties' Motions for Summary Judgment will be decided.

Under the Federal Rules of Civil Procedure, made applicable to this proceeding by Bankruptcy Rule 7056, a party will prevail on a motion for summary judgment when, "[t]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); FED.R.CIV.P. 56(c). In order to prevail, the movant must demonstrate all elements of the cause of action, but once that burden is established the opposing party must set forth specific facts showing there is a genuine issue for trial. *R.E. Cruise, Inc. v. Bruggeman*, 508 F.2d 415, 416 (6th Cir.1975); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Matsushita v. Zenith Radio Corp.*, 475 U.S. 574, 586–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). *See also In re Bell*, 181 B.R. 311 (Bankr.N.D.Ohio 1995). In addition, in cases such as this, where the Parties have filed cross-motions for summary judgment, the Court must consider each motion separately, since each party, as a movant for summary judgment, bears the burden to establish the nonexistence of genuine issues of material fact, and that party's entitlement to judgment as a matter of law. Thus, the fact that both parties simultaneously argue that there are no genuine factual issues does not in itself establish that a trial is unnecessary, and the fact that one party has failed to sustain its burden under FED.R.CIV.P. 56 does not automatically entitle the opposing party to summary judgment. Wright, A. Miller, E. Cooper, 10A Federal Practice and Procedure § 2720, at 16–17 (1983). However, in the cross-motion context, a lighter burden

is imposed upon the party who does not face the burden of proof at trial, because it need only point to the insufficiency of the evidence to prevail on a summary judgment motion as opposed to having to establish that all the elements of its cause of action are met. *T.W. Electrical Service, Inc. v. Pacific Elec. Contractors Assoc.,* 809 F.2d 626, 630 (9th Cir.1987) citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

■ Mrs. French brings her action under § 505 of the Bankruptcy Code which empowers a bankruptcy court to determine the tax liability of a debtor provided that the merits of the tax claim have not been previously adjudicated in a contested proceeding before a court of competent jurisdiction. 11 U.S.C. § 505(a). The purpose of § 505 is to afford a forum for the ready determination of the legality and/or amount of a tax claim, the determination of which, if left to another proceeding, might delay the administration of the bankruptcy estate. *In re Hunt,* 95 B.R. 442 444 (Bankr.N.D.Tex.1989). The grant of power accorded to the bankruptcy courts by virtue of § 505 is, however, entirely jurisdictional, and therefore decisions rendered under § 505 must be strictly confined to interpreting the appropriate provision of the Tax Code. *See Smith v. United States (In re Smith),* 68 B.R. 105, 106 (Bankr.W.D.Mo.1986).

In this case, Mrs. French brings her action under two provisions of the Tax Code. First, Mrs. French asks this Court to determine that her tax liability for the years 1987 through 1994 is zero pursuant to the Innocent Spouse Rule as now codified in 26 U.S.C. § 6015(b). In the alternative, Mrs. French asks this Court to reach the same result under paragraph (f) of § 6015 which allows a spouse, not other-wise entitled to relief under § 6015(b), to obtain tax relief if the "facts and circumstances" of the case demonstrate that such relief is needed. The following will address each basis in turn.

■ The Innocent Spouse Rule is an equitable doctrine and was created in specific response to the different filing options which are afforded to married taxpayers. Specifically, under the United States Tax Code, a married person is given the option of filing either a joint return or a separate return, but pursuant to 26 U.S.C. § 6013(d)(3), married couples availing themselves to the benefits of filing a joint return are held jointly and severally liable for all the tax owed on the couples' aggregate income, regardless of who actually earned the income, and regardless of whether or not the income is actually reported. *Glaze v. United States,* 641 F.2d 339, 343 (5th Cir.1981). The strict enforcement of this Rule, however, can lead to harsh results if one spouse understated their income or over itemized their allowable deductions without the other spouse's knowledge.[3] The Innocent Spouse Rule was therefore developed in an effort to offer some protection to a spouse who, through no fault of their own, did not have any knowledge of the incorrect tax reporting of the other spouse. *See Purcell v. Comm'r of Internal Revenue,* 826 F.2d 470, 475 (6th Cir.1987) (the purpose of the Innocent Spouse Rule is to protect one spouse from the overreaching or dishonesty of the other). Since its inception in 1971, the Innocent Spouse Rule, in an effort to fulfill the doctrine's equitable nature, has undergone a couple of changes, the most recent change occurring with the IRS Restructuring and Reform Act of 1998 which repealed the old innocent spouse law

---

**3.** For example, a divorcée could be held liable for his or her husband's taxes if the husband failed to report on a joint return embezzled funds which are thereafter secretly squandered, even though she had no knowledge of her former husband's activities and the result-ing omission of income, and even though she did not benefit in any way from the use of the funds. *Graham v. United States (In re Graham),* 199 B.R. 157, 158 (Bankr.N.D.Ohio 1996).

as contained in 26 U.S.C. § 6013(e), and replaced it with § 6015(b).

 Section § 6015(b), which applies to any tax liability arising after July 22, 1998, and also to any tax liability arising on or before July 22, 1998, that remains unpaid as of that date, requires that all of the following conditions be met to afford the innocent spouse relief:

(1) a joint return was filed;

(2) there is an understatement of tax attributable to erroneous items in the return;

(3) the 'innocent spouse' establishes that, at the time of signing the return, he or she did not know and had no reason to know that there was an understatement;

(4) taking into account all of the facts and circumstances, it is inequitable to hold the 'innocent spouse' liable for the deficiency in tax; and

(5) the 'innocent spouse' elects on a form to be created by the IRS, the benefits of § 6015(b) not later than two years after the IRS begins collection activities with respect to the individual making the election.[4]

In the present case, the United States contests Mrs. French's asserted status as an innocent spouse under § 6015(b) on various substantive grounds. In determining the merits of the arguments put forth by the United States, the Court notes that the burden of establishing the applicability

of the Innocent Spouse Rule is placed upon Mrs. French as the taxpayer.[5] The Court, however, will balance this burden of proof allocation with the principle that the Innocent Spouse Rule should be construed and applied liberally in favor of those for who it was designed to protect. *Silverman v. Comm'r of Internal Revenue*, 116 F.3d 172, 175 (6th Cir.1997).

 The first substantive ground upon which the United States contests Mrs. French's asserted status as an innocent spouse is based upon her noncompliance with the second element of the Innocent Spouse Rule as contained in § 6015(b)(1)(B). Specifically, the United States argues that the second element of the Innocent Spouse Rule has not been satisfied because the tax returns filed by Mr. and Mrs. French have not been found in any way by the IRS to contain an "understatement" of taxes owing. For the following reasons, the Court finds this assertion well taken.

The second element of the Innocent Spouse Rule under § 6015(b) requires that there exist "an understatement of tax attributable to erroneous items in the return." § 6015(b)(1)(B). In determining if there is an "understatement" of tax, the Innocent Spouse Rule directs this Court to apply the definition set forth under § 6662(d)(2)(A) of the United States Tax Code, which provides that an "understatement" of tax only occurs when the amount of tax required to be shown in the tax

---

**4.** The major difference with this new test, as compared to the previous innocent spouse test formerly contained in § 6013(e), is that under the old test the "understatement" of tax had to be "substantial," and, in the second element of the Innocent Spouse Rule, the modifier "grossly" preceded the word "erroneous." In addition, § 6015(b) adds a procedural requirement that was not originally contained in § 6013(e). Specifically, an individual wishing to avail themselves to the protection of the Innocent Spouse Rule of § 6015(b) must now make an election to do so within two years after the IRS begins its collection activities.

**5.** No burden of proof allocation is specifically delineated by the new innocent spouse provision under § 6015(b). However, under the former innocent spouse provision, as contained in § 6013(e), the burden of proof was determined to be upon the taxpayer. *Purcell v. Commissioner of Internal Revenue*, 826 F.2d 470, 473 (6th Cir.1987). Consequently, since the new innocent spouse provision under § 6015(b) is in most aspects consistent with the previous law, the Court will not reallocate the taxpayer's burden of proof. *See Shea v. Comm'r of Internal Revenue*, 780 F.2d 561, 565 (6th Cir.1986) (holding that since the amended version of the former § 6013(e)(1) was similar to the original version, the burden of proof allocation did not change).

return is less than the amount of tax actually shown in the tax return.[6] § 6015(b)(3).

■■■■ Applying this definition to the instant case, the Court cannot find that an "understatement" of tax exists, vis-a-vis the IRS, given the fact that since 1994 the IRS has never attempted to assess any additional tax against either Mr. or Mrs. French for any of the tax years at issue. Of course, this does not necessarily mean that an understatement of tax may not in a technical sense exist. For example, it is entirely possible that Mr. French did, in fact, understate his taxes by either understating his taxable income or overstating his allowable deductions. Nonetheless, even if this were the case, no "understatement" would exist for purposes of § 6015(b)(1)(B) as inherent in the very nature of an "understatement" under § 6662(d)(2)(A) is an assertion by the IRS of an "understatement" of tax on the tax return. Stated in another way, an understatement of tax cannot exist unless a deficiency is asserted by the IRS. *See Silverman v. Comm'r of Internal Revenue,* 116 F.3d 172, 173 (6th Cir.1997) (an innocent spouse is only relieved to the extent of the understatement by the IRS); *Sanders v. United States,* 509 F.2d 162, 167 (5th Cir. 1975) (the Innocent Spouse Statute was not intended to provide wholesale relief from joint and several liability); Jerome Borison, *Alice Through a Very Dark and Confusing Looking Glass: Getting Equity from the Tax Court in Innocent Spouse Cases,* 30 Fam.L.Q. 123, 138–39 (1996) (if the tax due relates merely to an unpaid balance on an accurate return, innocent spouse relief is not available). Consequently, in the absence of an assertion by

the IRS of a deficiency against Mrs. French for any of the tax years in question, this Court finds that no "understatement" of tax exists for purposes of the second element of the Innocent Spouse Rule. Accordingly, since all the requirements of § 6015(b) must be met in order to afford a spouse relief, the Court will not address Mrs. French's compliance (or lack thereof) with the other element contained in § 6015(b). Instead, the Court will proceed to examine the second issue raised by Mrs. French in support of her Complaint which pertains to her qualification for tax relief under paragraph (f) of § 6015.

■■■■ Section § 6015(f), which did not become a part of the Tax Code until 1998, permits tax relief to be granted if, (1) "after taking into account all the facts and circumstances" of the case it would be "inequitable to hold the individual liable for any unpaid tax or any deficiency," and (2) relief is not otherwise available under paragraph (b) of § 6015. The underlying purpose of this section is to permit spousal relief under circumstances which clearly call for the granting of relief, but when a strict reading of paragraph (b) of § 6015 would prohibit such relief.[7] For example, and very importantly, under the circumstances of Mrs. French's case, paragraph (f) of § 6015, unlike paragraph (b), permits the granting of tax relief under equitable circumstances regardless of whether a deficiency was asserted by the IRS. Consequently, relief may be granted to a spouse for a tax liability that was properly reported on a tax return, but that was not paid. No specific guidelines, however, are set out under § 6015(f) as to when a grant of

---

6. The specific language of § 6662(d)(2)(A) provides that "the term 'understatement' means the excess of (i) the amount of the tax required to be shown on the return for the taxable year, over (ii) the amount of the tax imposed which is shown on the return, reduced by any rebate (within the meaning of section 6211(b)(2))."

7. In addition, § 6015 also provides a "Separate Liability Election" under § 6015(c) which permits an individual who has filed a

joint return and who is either no longer married to, is legally separated from, or has lived apart from his or her spouse for at least twelve (12) months to limit liability for unpaid taxes to amounts determined by allocation of income and deductions as though the spouse had filed using the "married filing separately status." In this case, there is no assertion by Mrs. French that the separate liability election under paragraph (c) of § 6015 is applicable.

tax relief would be proper. In addition, as paragraph (f) of § 6015 was just recently enacted, there are currently no reported cases interpreting it. Notwithstanding, on December 7, 1998, the IRS released in its Notice 98–61 interim guidelines for determining when relief should be granted under § 6015(f), which although not binding upon this Court, are nevertheless helpful in interpreting this section.

Under IRS Notice 98–61, any spouse who seeks relief under paragraph (f) of § 6015 must establish that the following threshold requirements have been satisfied:

(1) the individual made a joint tax return for the tax year for which relief is sought;

(2) relief is not otherwise available to the individual under the innocent spouse provision of § 6015(b) or the separate liability election of § 6015(c);

(3) the individual applies for relief no later than two years after the date of the IRS' first collection activity after July 22, 1998 with respect to that individual;

(4) no assets were transferred between the joint filers as part of a fraudulent scheme;

(5) no disqualified assets were transferred to the requesting individual by the other spouse;

(6) the joint return was not filed with fraudulent intent;

(7) the liability remains unpaid when relief is requested.

Thereafter, with respect to individuals, such as Mrs. French, who seek relief when no deficiency has been asserted by the IRS, Notice 98–61 provides an additional list of both positive and negative factors that should be considered when granting relief. Among those factors weighing in favor of granting relief under § 6015(f) is whether "[t]he individual requesting relief will suffer hardship if the relief is not granted, even if such hardship does not constitute [an] undue hardship . . . ." By comparison, factors weighing against equitable relief include: (1) whether the unpaid liability is attributable to the spouse requesting the relief; (2) whether the individual requesting the relief has knowledge or reason to know of the unpaid liability; and (3) whether the requesting spouse significantly benefitted, beyond normal support, from the unpaid liability.

Applying the foregoing considerations to this case, the Court finds that insufficient evidence has been presented to determine whether Mrs. French, as a matter of law, does or does not qualify for equitable relief under § 6015(f). This holding is based upon two considerations: First, the Court cannot conclude that Mrs. French has met her burden of establishing that the threshold elements expounded in IRS Notice 98–61 have been met. Secondly, genuine issues of material fact exist as to whether the additional factors expounded upon by the IRS in Notice 98–61 cut in favor of granting Mrs. French tax relief. For example, the Parties clearly dispute the extent to which Mrs. French was involved in her husband's business, with Mrs. French, in her affidavit to the Court, asserting that her involvement in her husband's business was minimal, versus the contention made by the United States that the involvement of Mrs. French may have been significantly greater considering her status as the owner of her husband's business on the 1994 tax return submitted by both Mr. and Mrs. French.

Accordingly, both Parties' Motions for Summary Judgment will be denied to the extent of adjudicating Mrs. French's tax liability pursuant § 6015(f). However, given the interests at stake in this case, the Parties will be permitted to submit briefs and any other appropriate evidentiary materials to the Court concerning Mrs. French's qualification (or lack thereof) for equitable relief under § 6015(f). Thereafter, the Court will determine if the matter is appropriate for ruling, or if the case should be set for Trial. Given this decision, the Court at this time declines to

address the request by Mrs. French to set aside the sale of her real property. In reaching the conclusion found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this opinion.

Accordingly, it is

**ORDERED** that the Motion to Strike by the Plaintiff, Deanna Sue French, be, and is hereby, DENIED.

It is **FURTHER ORDERED** that the Motion for Summary Judgment by the Plaintiff, Deanna Sue French, be, and is hereby, DENIED.

It is **FURTHER ORDERED** that the Motion for Summary Judgment by the Defendants, the United States of America, et al., be, and is hereby, GRANTED except to the extent of determining the tax liability of the Plaintiff, Deanna Sue French, under 26 U.S.C. § 6015(f).

It is **FURTHER ORDERED** that the Parties have until October 29, 1999, to submit briefs, and any other relevant evidentiary materials to the Court in support of their respective positions under 26 U.S.C. § 6015(f). Thereafter, the Parties are given until November 15, 1999, to Reply to the opposing counsel's briefs.